IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| K-T TRACY, INC., an Oregon corporation; and KARRY TRACY and TEENA TRACY, individuals<br><br>    Plaintiffs,<br><br>v.<br><br>ALLIED INSURANCE CO. and AMCO INSURANCE COMPANY,<br><br>    Defendants. | 08-CV-330-BR<br><br>OPINION AND ORDER |

**BRUCE M. WHITE**
**PATRICK J KURKOSKI**
Mitchell Lang & Smith
2000 One Main Place
101 S.W. Main Street
Portland, OR 97204-3230
(503)221-101

          Attorneys for Plaintiffs

**WILLIAM G. EARLE**
**CARI EHRLICH WATERS**
Davis Rothwell Earle & Xochihua, PC
1900 Wells Fargo Center
1300 S.W. Fifth Avenue
Portland, OR 97201-5604
(503) 222-4422

1 - OPINION AND ORDER

**SCOTT J RYSKOSKI**
Ryskoski Law, P.L.L.C.
556 Silicon Drive
Suite 100
Southlake, TX 96092
(817) 310-3527

    Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (#8) and Defendants' Motion for Summary Judgment (#22). For the reasons that follow, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Defendants' Motion.

### BACKGROUND

    Plaintiffs own and operate a service station in Beaverton, Oregon. On August 14, 2007, Donald Daugherty filed an action against Plaintiffs in Washington County Circuit Court in which he alleged Plaintiffs' employee accidentally poured gasoline into the flagpole hole of his boat rather than into the gasoline tank. Daugherty further alleged he assisted Plaintiffs' employee in cleaning up the gasoline from the boat, was exposed to toxic fumes in the process, and suffered from gas inhalation and related injuries.

    On February 25, 2008, Plaintiffs filed an action in Multnomah County Circuit Court against Defendants from whom they had purchased a business liability insurance policy. Plaintiffs

2 - OPINION AND ORDER

brought claims against Defendants for breach of contract and tortious interference with business relationships and alleged Defendants wrongfully refused to defend and to indemnify Plaintiffs against the Daugherty action.

On March 17, 2008, Defendants removed the matter to this Court on the basis of diversity jurisdiction.

On April 18, 2008, Plaintiffs filed a Motion for Partial Summary Judgment on the issue of the duty to defend.  On May 13, 2008, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims.

On May 8, 2008, the parties stipulated for purposes of these Motions only that the Court need consider only the Complaint and the underlying insurance policy.

On July 10, 2008, the Court heard oral argument on both Motions.

On August 11, 2008, Plaintiff advised the Court that it had settled the Daugherty action, but the issues of the duty to defend and to indemnify that are now before this Court remain unresolved.

## **DISCUSSION**

In their Motion, Defendants contend the pollution exclusion in Plaintiffs' insurance policy precludes Defendants' obligation to defend and to indemnify Plaintiffs in the Daugherty matter.

3 - OPINION AND ORDER

In their Motion, Plaintiffs contend the pollution exclusion does not relieve Defendants from the obligation to provide Plaintiffs with a defense in the Daugherty matter.

**I.   Insurance contract interpretation.**

Under Oregon law, the construction of a contract is a question of law for the court.  *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006)(citing *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Ore.*, 313 Or. 464, 470 (1992)).  The Court's task is to "ascertain the intention of the parties to the insurance policy," and the Court accomplishes this "based on the terms and conditions of the insurance policy."  *Id*. at 649-50 (citing Or. Rev. Stat. § 742.016).

"If an insurance policy explicitly defines the phrase in question, [the Court] appl[ies] that definition."  *Id*. at 650.  *See also Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6*, 180 Or. App. 461, 467 (2002).

> If the policy does not define the phrase in question, [the Court] resort[s] to various aids of interpretation to discern the parties' intended meaning.  Under that interpretive framework, we first consider whether the phrase in question has a plain meaning, *i.e.*, whether it is susceptible to only one plausible interpretation.  If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis.  If the phrase in question has more than one plausible interpretation, we will proceed to the second interpretive aid.  That is, we examine the phrase in light of 'the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole.  If the ambiguity remains after the court has engaged in

4 - OPINION AND ORDER

>   those analytical exercises, then any reasonable
>   doubt as to the intended meaning of such [a]
>   term[] will be resolved against the insurance
>   company. However, . . . a term is ambiguous
>   . . . only if two or more plausible
>   interpretations of that term withstand scrutiny,
>   *i.e.*, continue[] to be reasonable despite our
>   resort to the interpretive aids outlined above.

*Id*.

## II.  Insurance policy language.

In the insurance policy at issue, Defendants agreed to

>   pay those sums . . . the insured becomes legally
>   obligated to pay as damages because of "bodily
>   injury" or "property damage" to which this
>   insurance applies.  We will have the right and
>   duty to defend the insured against any "suit"
>   seeking those damages for which there is coverage
>   under this policy.
>
>   HOWEVER, we will have no duty to defend the
>   insured against any "suit" seeking damages for
>   "bodily injury" or "property damage" to which this
>   insurance does not apply.

White Decl., Ex. 2 at 2 (emphasis in original).  The insurance policy, however, does not apply to

>   "[b]odily injury" or "property damage" arising out
>   of the actual, alleged or threatened discharge,
>   dispersal, seepage, migration, release or escape
>   of "pollutants":
>
>   >   a)   At or from any premises, site or
>   >        location which is or was at any time
>   >        owned or occupied by, or rented or
>   >        loaned to, any insured.

White Decl., Ex. 2 at 4.  The policy defines pollutants as

>   any solid, liquid, gaseous or thermal irritant or
>   contaminant, including but not limited to smoke,
>   vapor, soot, fumes, acids, alkalis, petroleum
>   products and their derivatives, chemicals and

5 - OPINION AND ORDER

>             waste.  Such irritants or contaminants are
>             "pollutants" whether or not they have any function
>             in your business, operations, premises, sites or
>             locations.

White Decl., Ex. 2 at 23.

### III. Analysis.

In the underlying complaint in the Daugherty matter, Daugherty alleges he "suffered from gas inhalation and related injuries" when Plaintiffs' employee "pour[ed] approximately seven gallons of gasoline into the hull of the boat."

The parties do not dispute Daugherty suffered "bodily injury" as that term is defined in the insurance policy. Defendants, however, assert the bodily injury and property damage arose from the discharge, dispersal, seepage, migration, release, or escape of a pollutant within the meaning of the insurance policy, which defines pollutants to include "petroleum products and their derivatives" and "pouring" as a form of discharge, dispersal, or release.  According to Defendants, therefore, the insurance policy specifically excludes coverage for the type of bodily injury suffered by Daugherty.

Plaintiffs, however, contend the bodily injury did not arise from the discharge, dispersal, seepage, migration, release, or escape of a pollutant because the gasoline at issue in the Daugherty matter should not be construed as a pollutant and the alleged acts of Plaintiffs' employee do not constitute a discharge, dispersal, or release of gasoline.

6 - OPINION AND ORDER

### A. Gasoline is a pollutant as defined in the insurance policy.

Plaintiffs concede in their Motion that the definition of pollutant in the insurance policy "appears to include the gasoline to which Daugherty was allegedly exposed." Plaintiffs, however, assert "[t]he definition . . . only has meaning when applied. General application of the definition could result in absurd results . . ., [and,] therefore it must be evaluated within the context of the pollution exclusion and the broader context of the policy itself." Plaintiffs assert a substance is a pollutant under the insurance policy only when that substance causes pollution damage to the environment or it has been handled in a manner that results in environmental contamination.

Plaintiffs' interpretation of the term "pollutant," however, does not follow Oregon's rules of contract interpretation. As noted, under Oregon law "[i]f an insurance policy explicitly defines the phrase in question, [the court] appl[ies] that definition." *Holloway*, 341 Or. at 650. Only when the insurance policy does not explicitly define a phrase does the Court "resort to various aids of interpretation to discern the parties' intended meaning." *Id*. Here the policy explicitly defines the term "pollutant" to include "petroleum products and their derivatives . . . whether or not they have any function in your business, operations, premises, sites or locations." There is not anything ambiguous or unclear about this definition. The

7 - OPINION AND ORDER

Court, therefore, applies this definition pursuant to *Holloway* and does not proceed to other rules of construction. Accordingly, the Court concludes the gasoline at issue in the Daugherty matter is a "pollutant" within the meaning of the insurance policy.

      **B.    Pouring gasoline is a "discharge, dispersal, . . . [or] release" of gas**.

At oral argument, Plaintiffs acknowledged the bodily injury and property damage at issue in the underlying tort case were caused when their employee "misfueled" a customer's boat by "pumping" or "pouring" gasoline into the hull of the boat instead of its gas tank.  Plaintiff also conceded the act of "pumping" or "pouring" gasoline at a gas station literally results in the "discharge," "dispersal," or "release" of the gasoline. Nonetheless, Plaintiff argues it is unreasonable to read the policy language literally to exclude coverage for this claim because a policyholder in Plaintiffs' line of business (*i.e.*, gas-station operator) would not expect the language to apply literally to exclude losses that arise from such an ordinary mishap and do not involve environmental pollution.

The Court, however, does not see any way to reconcile Plaintiffs' argument about the meaning of the exclusionary terms "discharge," "dispersal," or "release" with the policy language explicitly defining "pollutants" as "petroleum products . . . whether or not they have any function in your business."  As

8 - OPINION AND ORDER

noted, the Court does not have the authority to ignore the plain language of the insurance policy.  Moreover, Plaintiffs have not provided nor has the Court found any authority to support Plaintiffs' argument.  The Court, therefore, concludes the insurance policy excludes coverage for the acts alleged in the Daugherty matter, and, therefore, Defendants do not have the duty to defend or to indemnify Plaintiffs in the Daugherty matter.

Accordingly, the Court denies Plaintiffs' Motion for Partial Summary Judgment and grants Defendants' Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment (#8), **GRANTS** Defendants' Motion for Summary Judgment (#22), and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 3rd day of September, 2008.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge